No. 759 August 12, 2026 125

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEX GERKIN,
*Defendant-Appellant.*

Washington County Circuit Court
22CR36286; A184867

Janelle F. Wipper, Judge.

Argued and submitted May 21, 2026.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Paul Smith, Interim Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), raising three assignments of error. In his first assignment of error, he challenges the trial court's denial of his motion to suppress statements and other evidence that the state obtained following his arrest. Specifically, defendant argues that the arresting officer provided *Miranda* warnings that were incomprehensible and thus constitutionally inadequate under either the state or federal constitutions. In defendant's second assignment of error, he contends that the trial court erred in denying his motion to suppress the evidence resulting from warrantless field sobriety tests (FSTs). In his third assignment of error, defendant contends that the trial court erred in denying defendant's motion to exclude drug recognition expert (DRE) evidence.

We agree with defendant that the arresting officer failed to reasonably convey the substance of the *Miranda* warnings to defendant and that the trial court erred in denying defendant's motion to suppress evidence resulting from that violation, and, thus, we reverse and remand. That conclusion, as defendant acknowledged at oral argument, obviates the need to address the remaining assignments of error.

"The question of what transpired during a custodial interrogation is a question of fact for the trial court, and we are bound by the trial court's findings of fact if they are supported by evidence in the record, although we assess anew whether those facts suffice to meet constitutional standards." *State v. Holcomb*, 213 Or App 168, 173, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (internal quotation marks omitted; brackets omitted). If the trial court has not made an express factual finding, and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court found the facts in a manner consistent with its ultimate conclusion only if such findings are a "necessary predicate to the court's conclusion." *State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011).

We apply that standard of review to the facts as taken from the record at the suppression hearing. We specifically take the facts of defendant's arrest from Officer Cooley's body camera footage, which the parties do not dispute is an accurate representation of the arresting officers' encounter with defendant.[1] Officers stopped defendant after receiving information that defendant was speeding on his motorcycle. Officer Cooley placed defendant in handcuffs and read the following *Miranda* warnings from a script on his phone:

> "You have the right to remain silent. Anything you say can and will be used in a court of law. You have the right to talk to a lawyer and have him or her present while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before questions."

As captured by Cooley's body camera footage, it took him approximately eight seconds to read the above warnings. For most of the reading, defendant was not looking at Cooley. Cooley then asked defendant if he understood his rights. Defendant responded, "Huh?" Cooley responded, "I said do you understand your rights?" Defendant answered, "Yes sir." Cooley then began questioning defendant, administered FSTs, and subsequently arrested defendant for DUII. Shortly after, defendant consented to a DRE evaluation. The expert conducted the evaluation approximately two hours after defendant's arrest and concluded from the evaluation results that defendant was impaired by cannabis.

Before trial, defendant filed a motion to suppress the evidence resulting from the alleged violation of his *Miranda* rights. He argued that Cooley's recited warnings were legally inadequate because the speed at which Cooley read them made the warnings incomprehensible. The trial court denied the motion to suppress. Although the trial court found that Cooley "did read very quickly the *Miranda* warning and the defendant asked a question * * * after those *Miranda* rights were written or read," it nevertheless concluded that the warnings were constitutionally adequate and that defendant had validly waived his rights. Specifically, the court noted:

---

[1] The trial court admitted the body camera footage into evidence and relied on that footage in making its factual findings and conclusions of law regarding the *Miranda* issue.

"The officer repeated the, 'Do you understand those rights?' question, to which the defendant responded, 'Yes, sir.'

"As far as the court is concerned, that appears to be sufficient for the *Miranda* warnings. There's * * * not an issue regarding a language. There wasn't any further questions by the defendant seeking clarification.

"And so for purposes of seeing someone who is seeing the body cam, it appears that once the officer says, 'Do you understand those rights?' the defendant was able to answer very quickly afterwards that, 'Yes, sir.'"

Defendant now appeals, reprising the arguments he made below. The only questions at issue are whether Cooley's recitation of the *Miranda* warnings was constitutionally adequate, and, if so, whether the state met its burden of showing that defendant's waiver of his rights was knowing, intelligent, and voluntary.[2] We review both questions for errors of law. *State v. Cazarez-Hernandez*, 280 Or App 312, 314, 381 P3d 969 (2016).

We first consider the questions under the Oregon Constitution. *State v. Quinn*, 112 Or App 608, 612, 831 P2d 48, *rev den*, 313 Or 627 (1992). Article I, section 12, requires police officers to clearly inform individuals held in custody of their right against self-incrimination, and their derivative right to assistance of counsel during custodial interrogation, prior to questioning them. *State v. Fink*, 285 Or App 302, 309, 395 P3d 934 (2017). That constitutional requirement is accomplished through the provision of *Miranda*-like warnings. *Id.*; *see Miranda v. Arizona*, 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). In determining whether a given recitation of the warnings was constitutionally adequate, "the inquiry is simply whether the warnings reasonably convey to a suspect [their] rights as required by *Miranda*." *Fink*, 285 Or App at 310. Thus, "[t]he substance of

_____

[2] The parties agree that Cooley was required under Oregon law to provide *Miranda*-like warnings because defendant was in custody at the time Cooley questioned him. *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990).

the warnings, not the exact words, determines whether the warnings are adequate." *Quinn*, 112 Or App at 616.

    To be clear, a complete recitation of the exact words of the warnings is not necessarily enough on its own to sufficiently apprise a suspect of their rights. *See Missouri v. Seibert*, 542 US 600, 611, 124 S Ct 2601, 159 L Ed 2d 643 (2004) ("Just as no talismanic incantation is required to satisfy *Miranda*'s strictures, it would be absurd to think that mere recitation of the litany suffices to satisfy *Miranda* in every conceivable circumstance." (Internal quotation marks, brackets, and citation omitted.)). The recitation of the warnings must also be coherent such that a suspect could understand what is being said to them. *See State v. Vondehn*, 348 Or 462, 481, 236 P3d 691 (2010) (The state must "establish that the police recited the warnings completely and coherently" for them to be legally adequate.).

    Applying that legal framework to the undisputed facts, we conclude that the trial court erred in concluding that Cooley's recitation of the warnings was constitutionally adequate. As noted above, Cooley recited the warnings in approximately eight seconds. Although eight seconds might not intuitively sound like an unusually short time in which to read four sentences, the video recording of the officer's recitation drives home the near-impossible task of conveying *Miranda* warnings in that period of time. Cooley did not pause between saying "I'm going to read you your rights" and beginning the warnings, nor did he pause between the first and second warnings and between the third and fourth warnings. Cooley did not enunciate many of the individual words that serve to advise a person of their rights, particularly when reading the third and fourth warnings. The warnings as read obscured the substance of the rights that Cooley was constitutionally required to communicate to defendant and could not have "reasonably conveyed" the substance of the rights to defendant.

    The state contends that, despite the fast recitation speed, Cooley nevertheless "provided defendant with a complete recitation of the *Miranda* warnings" by reading the script from his phone verbatim. Again, the fact that the *Miranda* warnings may have been complete does not answer

the question of whether the warnings were provided in a way that was comprehensible. As noted, the speed at which Cooley read the warnings rendered the warnings incoherent and thus incapable of reasonably conveying the substance of those warnings to defendant. The advice of rights was therefore constitutionally inadequate.

The state also contends that the evidence of Cooley asking twice if defendant understood his rights, and defendant responding in the affirmative to the second question, is sufficient to support the trial court's conclusion that defendant understood the rights despite the speed of Cooley's recitation. The state also points to the absence of other evidence indicating defendant personally lacked understanding as further support for the trial court's conclusion. However, assessing whether a suspect validly waived their rights is a distinct and subsequent analysis from whether the given warnings were adequate to apprise them of their rights. *See State ex rel Juv. Dept. v. Deford*, 177 Or App 555, 573, 34 P3d 673 (2001) (The knowing and intelligent inquiry "necessarily focuses primarily on the defendant's state of mind, rather than on police conduct."). Provision of constitutionally adequate *Miranda* warnings that convey the rights protected by Article I, section 12, is a necessary prerequisite to determining whether the particular defendant waived those rights. *Vondehn*, 348 Or at 480 ("The Oregon Constitution requires *Miranda* warnings to ensure that a waiver of the rights conferred by Article I, section 12, is knowing as well as voluntary."). Thus, whether defendant understood his rights and could validly waive those rights is irrelevant to the question of whether the warnings as provided were constitutionally inadequate. *See Miranda*, 384 US at 471-72 ("[The warnings are] an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of [the] right[s] will suffice to stand in [their] stead. Only through such a warning is there ascertainable assurance that the accused was aware of [the] right[s]."). We therefore conclude that Cooley violated defendant's Article I, section 12, rights by providing constitutionally inadequate *Miranda* warnings.

"When an officer violates *Miranda* by failing to give the requisite warnings, we suppress not only the statements

that a suspect makes in direct response to unwarned questioning but also evidence that derives from or is a product of that constitutional violation." *State v. Jarnagin*, 351 Or 703, 713, 277 P3d 535 (2012). Because we conclude that Cooley violated *Miranda* by failing to give adequate warnings to defendant prior to questioning him, the trial court erred in failing to suppress all the evidence obtained as a result of that violation, which includes the evidence the state obtained through the FSTs and the DRE evaluation.

Reversed and remanded.